**Opinion filed April 30, 2009**



In The

# Eleventh Court of Appeals

————

## No. 11-08-00259-CV

————

## BRAD VAUGHN AND EAST COAST DIRECTIONAL DRILLING, INC., Appellants

## V.

## INTREPID DIRECTIONAL DRILLING SPECIALISTS, LTD., Appellee

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CV-46633**

**O P I N I O N**

Intrepid Directional Drilling Specialists, Ltd. obtained a temporary injunction enforcing covenants not to compete against its former employee Brad Vaughn and East Coast Directional Drilling, Inc. In this interlocutory appeal, Vaughn and East Coast appeal from the trial court's order granting the temporary injunction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon 2008). We affirm.

*Factual Background*

Intrepid performs directional drilling services. Vaughn worked as a salesman for Intrepid for nine months before leaving in 2004 or 2005. After leaving Intrepid, Vaughn formed another directional drilling company, Vaughn Guidance Systems, LLC (VGS). In March 2007, Intrepid purchased VGS from Vaughn and his mother, Carolyn, for $7,000,000. Vaughn received $3.43 million of the sales proceeds, and he became an employee of Intrepid. Vaughn and Intrepid signed a three-year employment agreement. The agreement provided that Vaughn would be paid a signing bonus of $15,000, a base annual salary of $150,000, and a bonus in accordance with Intrepid's directional drilling specialists sales commission plan. Vaughn signed an agreement not to compete, dated March 30, 2007. The agreement included the following provisions:

2. **Covenant Against Competition**. [Vaughn] agrees that during the period commencing on [March 30, 2007] and ending on March 31, 2011 (the "Non-Compete Period"), [he] shall not (except on behalf of [VGS] and/or Intrepid) engage, directly or indirectly, within the geographic area set out on Schedule A, attached hereto and made a part hereof (the "Restricted Territory"), in any manner including by way of example, but without limitation, as a sole proprietor, partner, officer, director, Member, member, investor, lender, lessor, advisor, consultant, independent contractor or employee in directional drilling and/or measurement while drilling; provided, however, that the foregoing shall not preclude [Vaughn] from owning not more than one percent (1%) of the outstanding voting securities of any company having publicly-traded equity securities.

3. **Covenants Against Solicitation of Customers, Employees and Suppliers**.

(a) [Vaughn] agrees that during the Non-Compete Period, [he] shall not (except on behalf of [VGS] and/or Intrepid), solicit, directly or indirectly, any former customers of [VGS] or any current or prospective customers of [VGS] and/or Intrepid for the purpose of selling within the Restricted Territory directional drilling and/or measurement while drilling services, or otherwise interfere, directly or indirectly, in any manner with any relationship between [VGS] and/or Intrepid and such customers within the Restricted Territory.

(b) [Vaughn] agrees that during the Non-Compete Period, [he] shall not solicit, recruit or employ, directly or indirectly, within the Restricted Territory any of [VGS's] and/or Intrepid's employees, or otherwise interfere, directly or indirectly, in any manner with their employment by [VGS] and/or Intrepid.

2

(c) [Vaughn] agrees that during the Non-Compete Period [he] shall not take any action which would, or has the potential to, impair the goodwill of the business of [VGS] and/or Intrepid, including, without limitation, actions which would interfere with or damage [VGS's] and/or Intrepid's business relationships with its employees, suppliers, creditors, customers and others with which it does business.

Schedule A of the agreement contained a "Geographic Scope of Limitation" that included the following states: Texas; New Mexico; Oklahoma; Louisiana; and Colorado.

### Trial Court Proceedings

On August 27, 2008, Intrepid filed this cause against Vaughn, East Coast, and Joshua E. Mitchell. Like Vaughn, Mitchell is a former employee of Intrepid.[1] Mitchell had an employment agreement with Intrepid that contained covenants not to compete. In its petition, Intrepid alleged that Vaughn and Mitchell had conspired with each other "to violate their Employment Agreements with Intrepid and their fiduciary and other contractual duties owed to Intrepid by leaving the employ of Intrepid and taking one or more Intrepid clients, business opportunities and employees with them to a new entity, East Coast." Intrepid also alleged that Vaughn's wife had created East Coast "as an entity to which Vaughn and Mitchell would divert Intrepid business, employees, and customers, to Intrepid's detriment." Intrepid alleged that Vaughn and Mitchell had breached their covenants not to compete, and Intrepid sought temporary and permanent injunctive relief to enforce the covenants against them. Intrepid also alleged breach of fiduciary duty, misappropriation of trade secrets, and conspiracy claims against Vaughn and Mitchell. The trial court granted Intrepid a temporary restraining order enforcing the covenants not to compete against Vaughn and Mitchell.

The trial court conducted a two-day hearing on Intrepid's request for temporary injunctive relief. Following the hearing, the trial court entered an order granting Intrepid a temporary injunction against Vaughn and denying Intrepid injunctive relief against Mitchell. In the order, the trial court found that Intrepid had established a probable right of recovery against Vaughn and East Coast and that Intrepid had no adequate remedy at law. The trial court granted the temporary injunction "to preserve the status quo between the parties pending final resolution of this suit, or until March 31, 2011, whichever date first occurs."

---

[1]Intrepid terminated Vaughn's and Mitchell's employment the day after filing this cause.

3

The trial court made detailed findings in support of its conclusion that Intrepid had established a probable right of recovery. The trial court stated the following findings, among others, in its order:

(1) Pursuant to and in conjunction with the Purchase Agreement, INTREPID and VAUGHN also entered into an Agreement Not To Compete ("Vaughn Non-Compete Agreement"), attached to this order. . . . VAUGHN was contractually employed by INTREPID from approximately March 20, 2007 until his employment with INTREPID was terminated by INTREPID on August 28, 2008;

(2) On April 22, 2008, VAUGHN's wife Dana Sue Vaughn organized EAST COAST as a for-profit corporation under the laws of the State of Texas. Although organized by Dana Sue Vaughn, EAST COAST is under the direction and control of VAUGHN. VAUGHN has operated and intends to operate EAST COAST as a directional drilling and measurement while drilling company;

(3) The Vaughn Non-Compete Agreement restricts VAUGHN from conducting certain competitive activities in a five-state restricted territory consisting of Texas, New Mexico, Oklahoma, Louisiana and Colorado (the "Restricted Territory"). VAUGHN is bound by the terms of the Vaughn Non-Compete Agreement and it is enforceable by INTREPID against VAUGHN;

(4) The Vaughn Non-Compete Agreement protects INTREPID against VAUGHN engaging in competing work within the Restricted Territory and also protects INTREPID's customer base within the Restricted Territory against certain competitive activities by VAUGHN, as specified in the Vaughn Non-Compete Agreement, regardless of the location of the actual work to be performed on behalf of the INTREPID customer;

(5) Chesapeake Energy Corporation ("CHESAPEAKE") is a valuable business customer of INTREPID which is headquartered in Oklahoma but is engaged in business both within and beyond the Restricted Territory;

(6) Imminent and irreparable harm will be sustained by INTREPID as a result of VAUGHN's breach and threatened breach of Sections 2, 3(a) and 3(c) of [the] Vaughn Non-Compete Agreement. The Court finds that INTREPID has established its probable right to recover for breach and threatened breach of the Vaughn Non-Compete Agreement by introduction of evidence tending to establish that VAUGHN caused EAST COAST to attempt to compete against INTREPID by conducting directional drilling activities and/or measurement while drilling activities for INTREPID customer CHESAPEAKE in Pennsylvania;

4

(7) VAUGHN breached and threatened breach of Section 3(b) of the Vaughn Non-Compete Agreement when VAUGHN solicited and recruited Defendant MITCHELL to work for VAUGHN and EAST COAST;

(8) VAUGHN has used and, absent injunction, intends to continue to use EAST COAST to compete with INTREPID in the Restricted Territory;

(9) VAUGHN has competed and, absent injunction, intends to continue to compete with INTREPID in the Restricted Territory;

(10) The Court finds that no reformation of the Vaughn Non-Compete Agreement is necessary under [TEX. BUS. & COM. CODE ANN. § 15.50 (Vernon 2002)].

The trial court also found that, absent a temporary injunction, Intrepid would suffer irreparable injury in two respects:

(1) Loss of employees to VAUGHN and/or EAST COAST; and

(2) Loss of customers to VAUGHN and/or EAST COAST from within the Restricted Territory.

The trial court stated that, "[u]nder the circumstances described herein, including the potential ongoing loss of employees and customers, INTREPID's damages are impossible to measure by any definite, certain, or useable pecuniary standard." Therefore, the trial court concluded that Intrepid's harm was imminent, irreparable, and lacked an adequate legal remedy.

The trial court awarded injunctive relief in Section III of the order. In Section III, the trial court required Vaughn and East Coast to immediately:

(a) Cease, desist and refrain from any direct or indirect participation in a directional drilling or measurement while drilling entity within the Restricted Territory. The 1% or less ownership exclusion under Paragraph 2 of the Vaughn Non-Compete Agreement is excepted;

(b) Cease, desist and refrain from any solicitation of any INTREPID customer within the Restricted Territory for selling directional drilling or measurement while drilling within the Restricted Territory (paragraph 3(a) of the Vaughn Non-Compete Agreement);

(c) Cease, desist and refrain from any other interference with any INTREPID customer within the Restricted Territory for directional drilling or measurement

5

while drilling outside the Restricted Territory (paragraph 3(a) of the Vaughn Non-Compete Agreement);

(d) Cease, desist and refrain from any solicitation or offers of employment to any of INTREPID's employees within the Restricted Territory (paragraph 3(b) of the Vaughn Non-Compete Agreement);

(e) Cease, desist and refrain from any conduct calculated to interfere with, impair or disparage INTREPID's business relationships with INTREPID's customers, creditors, and suppliers located within the Restricted Territory (paragraph 3(c) of the Vaughn Non-Compete Agreement).

*Issues on Appeal*

Vaughn and East Coast present two issues for review. In their first issue, they contend that the trial court abused its discretion in granting the temporary injunction. In their second issue, they assert that the temporary injunction was fatally defective in form and content and, therefore, failed to comply with the requirements of Tex. R. Civ. P. 683.

*Standard of Review*

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* A probable right to the relief sought is shown by alleging a cause of action and presenting evidence that tends to sustain it. *Tanguy v. Laux*, 259 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2008, no pet.). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204.

We review a trial court's order granting or denying a temporary injunction under an abuse of discretion standard. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 58. The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. In

6

reviewing an order granting or denying a temporary injunction, we draw all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 896 (Tex. App.—Dallas 2006, no pet.); *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A trial court does not abuse its discretion when it bases its decision on conflicting evidence, as long as some evidence in the record reasonably supports the trial court's decision. *Butnaru*, 84 S.W.3d at 211; *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 105 (Tex. App.—Austin 2003, no pet.).

*Analysis*

Vaughn and East Coast contend in their first issue that the trial court abused its discretion in granting the temporary injunction. The evidence at the temporary injunction hearing showed that Chesapeake was a valuable customer to Intrepid. Clint Leazer, the President of Intrepid, testified that Intrepid did about $45 million of business with Chesapeake on a yearly basis and that it would be a substantial loss to Intrepid to lose Chesapeake as a customer. Vaughn acknowledged during his testimony that Chesapeake was a "target or a key account" for Intrepid. The evidence also showed that Chesapeake is headquartered in Oklahoma, which is within the five-state restricted territory in Vaughn's agreement not to compete.

Vaughn set up East Coast in April 2008. Vaughn testified that East Coast was formed for the purpose of performing directional drilling jobs in the East Coast area of the United States. Vaughn also testified that, in late August 2008, he scheduled a job for East Coast to provide directional drilling services to Chesapeake in Pennsylvania. Intrepid obtained a temporary restraining order from the trial court before East Coast performed the Chesapeake job, and East Coast elected not to perform the job.

Intrepid presented evidence that Vaughn had solicited its employees to work for East Coast. Nathan L. Moore, a Vice President of Operations for Intrepid, testified that Vaughn had approached him on two occasions about leaving Intrepid and going into a directional drilling business with him. Moore also testified that Vaughn offered him and Mitchell 15% interests in the business.

The record supports the trial court's granting of a temporary injunction. On behalf of East Coast, Vaughn agreed to perform a job for Chesapeake in Pennsylvania. Intrepid presented evidence

7

tending to show that Vaughn breached or threatened breach of Paragraphs 3(a), (b), and (c) of his agreement not to compete. The evidence tends to show (1) that Vaughn interfered with an Intrepid customer, Chesapeake; (2) that Vaughn engaged in conduct that was calculated to interfere with, impair, or disparage Intrepid's business relationship with Chesapeake; and (3) that Vaughn solicited and recruited Intrepid employees to work for East Coast. Therefore, the evidence supports the trial court's finding that Intrepid established a probable right to the relief sought on its claims that Vaughn had breached his agreement not to compete. The evidence also supports the trial court's findings that, in the absence of an injunction, Intrepid would suffer irreparable injury and that Intrepid's damages could not be measured by any certain pecuniary standard. Intrepid established the three elements necessary to obtain a temporary injunction.

Vaughn and East Coast contend that Sections III(b), (c), and (e) of the temporary injunction are unenforceable because they do not comply with the requirements of Section 15.50(a) of the Business and Commerce Code. Sections (III)(b) and (c) are based on Paragraph 3(a) of Vaughn's agreement not to compete; Section III(e) is based on Paragraph 3(c) of Vaughn's agreement not to compete. Vaughn and East Coast also assert that the trial court erred in finding that no reformation of Vaughn's agreement not to compete was necessary.

The legal issues before a trial court at a temporary injunction hearing are whether the applicant showed a probability of success and irreparable injury; the underlying merits of the controversy are not presented. *Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 619 (Tex. App.—Dallas 2004, no pet.); *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 882 (Tex. App.—Dallas 2003, no pet.). At a temporary injunction hearing, a trial court does not address the ultimate issue of whether a covenant not to compete is enforceable under Section 15.50 of the Business and Commerce Code. *Tom James*, 109 S.W.3d at 885. Rather, a determination of "[t]hat issue awaits a final judgment on the merits, such as a final judgment entered after a jury or bench trial or a hearing on a motion for summary judgment." *Id.* Thus, by granting a temporary injunction, a trial court does not declare that a covenant not to compete is valid. Likewise, an appeal from an order granting or denying a temporary injunction based on a covenant not to compete does not present for appellate review the ultimate issue of whether the covenant is enforceable under Section 15.50 of the Business and Commerce Code. *Loye*, 156 S.W.3d at 619; *Tom James*, 109 S.W.3d at 882-83.

8

A determination of the issues of whether the covenants in Vaughn's agreement not to compete are enforceable and whether they must be reformed must await a final judgment on the merits.

Vaughn and East Coast argue that Section III(c) of the temporary injunction is based on the trial court's improper interpretation of Paragraph 3(a) of Vaughn's agreement not to compete. In Paragraph 3(a), Vaughn agreed, among other things, not to "otherwise interfere, directly or indirectly, in any manner with any relationship between [VGS] and/or Intrepid and such customers within the Restricted Territory." In Section III(c), the trial court ordered Vaughn and East Coast to "[c]ease, desist and refrain from any other interference with any INTREPID customer within the Restricted Territory for directional drilling or measurement while drilling outside the Restricted Territory." Vaughn and East Coast contend that the trial court improperly interpreted Paragraph 3(a) to include drilling "outside the Restricted Territory." However, the language in Paragraph 3(a) provides support for the trial court's interpretation. Paragraph 3(a) prohibits interference with any relationship between Intrepid and its customers within the restricted territory. For Paragraph 3(a) to apply, the customer must be located in the restricted territory. However, Paragraph 3(a) does not contain a requirement that the drilling occur within the restricted territory. Based on the language in Paragraph 3(a) and the evidence at the temporary injunction hearing, we cannot say that the trial court's interpretation of Paragraph 3(a) constituted an abuse of discretion. *See Simon Prop. Group (Tex.) L.P. v. May Dep't Stores Co.*, 943 S.W.2d 64, 73-74 (Tex. App.—Corpus Christi 1997, no writ) (The trial court did not abuse its discretion because a substantial difference of opinion existed as to the proper construction of a legal document.); *183/620 Group Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 904 (Tex. App.—Austin 1989, writ dism'd w.o.j.) (The trial court reasonably concluded that a party had shown a probable right of recovery where a bona fide dispute existed as to the construction of contract documents.).

The trial court did not abuse its discretion in granting the temporary injunction. We overrule Vaughn and East Coast's first issue.

In their second issue, Vaughn and East Coast assert that the temporary injunction fails to comply with Rule 683. Rule 683 provides, in relevant part, that orders granting injunctions "shall be specific in terms" and "shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." Vaughn and East Coast contend that

9

Sections III(b), (c), and (e) contain inadequate descriptions of "customers" and that, therefore, they are vague, ambiguous, and overly broad. They also contend that the descriptions of the conduct to be restrained in Sections III(c) and (e) of the order – "any other interference" and "any conduct calculated to interfere with, impair or disparage INTREPID's business relationships" – are vague, ambiguous, overly broad, and insufficient to apprise them of the restrained activities. Sections III(c) and (e) of the order require Vaughn and East Coast not to interfere with Intrepid's customers and Intrepid's business relationships with its customers that are located within the five-state restricted territory. Section III(b) also relates to Intrepid's customers in the restricted territory.

The trial court's order identified Chesapeake as Intrepid's customer. Although the trial court's order did not identify Intrepid's other customers that were located within the five-state restricted territory, Vaughn's testimony demonstrated that he either knew or could easily determine the identity of the other customers. Under these circumstances, the trial court's order sufficiently identified Intrepid's customers for the purposes of Rule 683. *See Amalgamated ACME Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 397-98 (Tex. App.—Austin 2000, no pet.) (A temporary injunction that did not specifically name the applicant's customers and advertisers complied with Rule 683 where the party enjoined admitted it could identify the customers and advertisers.); *Safeguard Bus. Sys., Inc. v. Schaffer*, 822 S.W.2d 640, 644 (Tex. App.—Dallas 1991, no writ) (In reviewing a permanent injunction, the court stated that "[o]rders generally restraining solicitation of customers and not specifically listing the individual customers have not been found to be overbroad."). Vaughn's knowledge of Intrepid's customer base will allow him and East Coast to avoid violating the temporary injunction. The trial court's order described in reasonable detail the acts sought to be restrained and, therefore, complied with Rule 683. We overrule Vaughn and East Coast's second issue.

*This Court's Ruling*

We affirm the trial court's order granting the temporary injunction.

April 30, 2009                                          TERRY McCALL

Panel consists of: Wright, C.J.,                       JUSTICE
McCall, J., and Strange, J.

10